**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| SWEETWATER BREWING COMPANY, LLC; FREDRICK BENSCH; TILRAY, INC.; and APHRIA INC., <br><br> Plaintiffs, <br><br> v. <br><br> RAY SCOTT FUSS, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. <br><br><br><br> JURY TRIAL DEMANDED |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiffs SweetWater Brewing Co., LLC ("SweetWater"), Fredrick Bensch, Tilray, Inc. ("Tilray"), and Aphria Inc. ("Aphria") (collectively, "Plaintiffs") hereby bring this Complaint for Declaratory Judgment against the Defendant Ray Scott Fuss ("Defendant" or "Mr. Fuss").

## INTRODUCTION

This case concerns a drawing of a trout, which Defendant asserts is worth tens of millions of dollars. This trout drawing is not a Rockwell or a Monet, but a Ray

1

"Scott" Fuss original, drawn in 1996 for SweetWater, a brewery that had yet to produce a single bottle of beer.

Twenty-four years ago, Mr. Fuss created a few rainbow trout images for SweetWater to use in its branding. These images are now well known as central to the SweetWater brand. SweetWater paid Mr. Fuss in full for those images in 1996, and all was well for decades.

Upon learning that SweetWater had been sold to Aphria in 2020, Mr. Fuss promptly began claiming (for the first time) that he had not, in fact, been fully paid for his artwork, and that he is due in excess of thirty million dollars should SweetWater want to continue to use it. He has made his position clear in no fewer than five communications to SweetWater, and again in a Fulton County Superior Court lawsuit he has filed against SweetWater CEO and Founder Fredrick "Freddy" Bensch, eight other SweetWater-related entities, and unidentified "John Doe Unitholders."

SweetWater, its former parent company, Aphria, its current parent company, Tilray, and Mr. Bensch all now operate under the assumption that Mr. Fuss will sue them for copyright infringement for their ongoing use of SweetWater's 25-year-old trademarks, as he has repeatedly threatened. Not only do Plaintiffs now have a definite and concrete dispute with Mr. Fuss, but the Fulton County lawsuit is also so

factually and legally intertwined with the question of copyright infringement that Plaintiffs cannot allow that case to proceed without simultaneously seeking judgment on the ultimate question of copyright infringement.

## NATURE OF THE ACTION

1.

This is an action for a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., for the purpose of seeking a judicial determination of whether Plaintiffs have infringed copyrights owned by Defendant, which is a question of actual controversy between the parties as more fully set forth below.

## THE PARTIES

2.

Plaintiff Tilray is a Delaware corporation having its principal place of business in New York.

3.

Plaintiff Aphria is a Canadian corporation having its principal place of business in Ontario, Canada.

4.

Plaintiff SweetWater is a Georgia limited liability company having its principal place of business in Atlanta, Georgia.

5.

Mr. Bench is an individual residing in Telluride, Colorado.

6.

Mr. Fuss is an individual residing in Covington, Georgia.

**JURISDICTION AND VENUE**

7.

At all times relevant to this action, Defendant has resided in this District and therefore is subject to personal jurisdiction in this District.

8.

An actual and justiciable controversy exists between Plaintiffs and Defendant. As set forth in the letters and other communications attached hereto as Exhibits B through F and incorporated herein, Mr. Fuss has asserted that Plaintiffs' alleged use of artwork he created in 1996 infringes his copyrights. Accordingly, this declaratory judgment action is proper in this Court under 28 U.S.C. § 2201.

9.

This Court has subject matter jurisdiction over the federal claims pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a).

10.

Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(a).

## BACKGROUND FACTS

11.

In 1996, SweetWater's founders, Fredrick "Freddy" Bensch, Kevin McNerney, and Matt Patterson, were busy getting their new brewing company off the ground, constructing the physical brewery plant ("Brewery") and getting their business plans finalized. They approached Mr. Fuss, a graphic design artist, who was a friend of Mr. Patterson's family, and asked him to create a logo for the brewery. The founders asked they he create a trout, as they all shared a love for fly fishing and thought it would be a great image for the new brewery.

12.

Mr. Fuss accepted, and he and the founders agreed that Mr. Fuss would create the logo, which would include versions for use on beer bottles and a tap handle, in exchange for $500.

13.

In early 1996, Mr. Fuss created a few iterations of SweetWater's logo, including a realistic image of a rainbow trout leaping from the water, a banner that included an image of a trout, and a tap handle ("the Works"). The two-dimensional works are set forth below.




14.

Mr. Fuss invoiced SweetWater $500 for the Works, as set forth in the invoice dated January 27, 1996, and attached hereto as Exhibit A.

15.

SweetWater paid the invoice, and it began incorporating the Works into the labeling and marketing for the Brewery.

16.

SweetWater started brewing beer in January 1997. The soon-to-be-iconic "420 Extra Pale Ale" was first brewed on April 20, 1997. SweetWater packaged all of its beers with labels prominently featuring the Works, and most of its beers feature the same designs to this day.

17.

The Works were visible at the Brewery, which hosted tours and tastings beginning in 1997. The Works were also widely used on beer packaging, tap handles, mugs, and clothing beginning in 1997. A very small sample of such use is shown below:



 

18.

Use of the Works rapidly expanded over the next decade as SweetWater distributed its beers nationally. The Works also were (and are) prominently used in connection with Sweetwater 420 Fest, a multi-day festival in Atlanta that draws tens of thousands of guests to celebrate environmental awareness and music.



8

19.

SweetWater also incorporated the Works into its registered trademarks, including Reg. No. 3,570,004.

20.

Despite such extensive and public use of the Works, from 1996 to 2020, Mr. Fuss did not raise any concern over the use of the Works by SweetWater. Rather, he enjoyed a friendship with Mr. Bensch, and Mr. Fuss happily enjoyed the perquisites of being in the inner circle of SweetWater.

21.

Indeed, SweetWater was always within its rights to use the Works, either by virtue of an irrevocable implied license, ownership of the Works, or both.

22.

On December 2, 2020, Aphria acquired SweetWater. The acquisition generated significant press attention.

23.

On December 7, 2020, an attorney for Mr. Fuss contacted an outside attorney for SweetWater, sending an email to notify SweetWater that it was "imperative" that the "potential buyer" understand that Mr. Fuss owned the "underlying artwork" for

all of the SweetWater branding. A true and correct copy of this email is attached as Exhibit B and incorporated herein.

24.

SweetWater's counsel responded later that month, denying that Mr. Fuss owned the Works.

25.

Mr. Fuss' counsel then sent a formal letter on January 19, 2021, again claiming that Mr. Fuss owned the Works. A true and correct copy of that letter is attached as Exhibit C and incorporated herein.

26.

Counsel for SweetWater responded on February 9, 2021, denying Mr. Fuss' assertions.

27.

On May 3, 2021, Aphria merged with Tilray. As of the date of this Complaint, Tilray is the ultimate parent company of SweetWater.

28.

Counsel for Mr. Fuss sent SweetWater another letter dated May 18, 2021. A true and correct copy of that letter is attached hereto as Exhibit D and incorporated herein. This letter, in bold lettering, terminated **"each, every, and all licenses and**

**permissions to use the Copyrighted Material in any way."** It further noted in bold that

> **Mr. Fuss has not sold, assigned, licensed, conveyed, or otherwise transferred any right, title, or interest to Aphria, Tilray or any other assign or successor in interest to Mr. Bensch or Sweetwater Brewing and, as such, effective immediately, notice is hereby given of his lack of consent to, and his claims to prohibit and prevent, any and all parties from violating, disparaging, claiming ownership, duplicating, selling, copying, reproducing, or otherwise infringing on his exclusive rights in the Copyrighted Material.**

29.

The following day, Mr. Fuss' attorneys transmitted another communication, this time a "**FORMAL NOTICE TO CEASE & DESIST**" issued to "ALL PERSONS/ ENTITIES INVOLVED IN DISTRIBUTION OR DISPLAY OF SWEETWATER BEER OR ASSOCIATED MERCHANDISE USING SCOTT FUSS' COPYRIGHTED WORK REFERENCED BELOW AFTER THE DATE 05-18-21." (bold and underline in original). A true and correct copy of that "notice" is attached hereto as Exhibit E and incorporated herein.

30.

Having already stated its position on the matter several times, SweetWater saw no benefit in further dialogue and did not respond to the "notice."

31.

Mr. Fuss directed another communication to Mr. Bensch on September 15, 2021. The September 15th letter demanded "return" of the "Fuss Intellectual Property" and provided detailed instructions for Mr. Bensch to execute and notarize an "Affidavit of Disavowal, Revocation, and Renunciation" ("Disavowal Affidavit"). True and correct copies of that letter and the attached Disavowal Affidavit are attached hereto as Exhibit F and incorporated herein.

32.

The letter mandated that Mr. Bensch (1) sign and notarize the Disavowal Affidavit; (2) deliver a copy of the executed Disavowal Affidavit by 1:30 PM on September 20, 2021; (3) deliver a copy of the executed Disavowal Affidavit to Sweetwater and "Tilray's entire board of directors"; and (4) establish "funding and maintaining" of a "Trust Account or CD in trust."

33.

The Disavowal Affidavit not only contained language purporting to disavow any ownership in the Works by Mr. Bensch, but also required payment of $31,000,000 ($31 million dollars) into a trust account for Mr. Fuss.

34.

Mr. Bensch has never signed the Disavowal Affidavit or paid any money into a trust account for Mr. Fuss.

35.

On September 17, 2021, Mr. Fuss filed a 74-page Complaint in Fulton County Superior Court ("Fulton Complaint") against Mr. Bensch, eight companies affiliated with SweetWater, and "John Doe Unitholders." A true and correct copy of the Fulton Complaint is attached hereto as Exhibit G and incorporated herein.

36.

The Complaint is repetitive and hard to follow, but generally asserts that in 1996, when Mr. Fuss originally created the Works, the $500 payment he received pursuant to his written invoice was not complete payment, and that there was an "understanding implicit in the agreement" that Mr. Fuss's "interest in, and the value of, his intellectual property rights would grow as such intellectual property was used in, and foundation to, the growth of the Sweetwater brand." (Fulton Complaint, Ex. G hereto, ¶ 25).

37.

Mr. Fuss further stated in the Fulton Complaint that "implicit in this understanding" was that Mr. Fuss "would benefit in an amount attributable to the value of his property at the time of any Sweetwater Sale or Transfer." (Id.)

38.

Mr. Fuss asserted in the Fulton Complaint that the value allocated to the SweetWater Intellectual Property in the Aphria sale was $92 million (Fulton Complaint, Ex. G hereto, ¶¶ 91-94), and that Mr. Bensch's receipt of such funds constituted conversion because the intellectual property belonged to Mr. Fuss.

39.

The Fulton Complaint, strangely, did not bring claims against SweetWater, Aphria, or Tilray. However, in the Fulton Complaint, Mr. Fuss asserts that he has "copyright infringement claims that [Mr. Fuss] has and reserves against other parties"; states that Mr. Fuss "has demanded that Aphria, Sweetwater, and Tilray stop using the Intellectual Property, but they have declined to do so"; and asserts that the Sweetwater trademarks "cannot be used at this point without violating the copyrights of [Mr. Fuss]." (Fulton Complaint, Ex. G hereto, page 3 and ¶¶ 9, 147).

14

40.

The Fulton Complaint sets forth numerous claims, including conversion, breach of contract, unjust enrichment, fraud, and punitive damages, and seeks a constructive trust to hold $92 million.

41.

A substantial controversy exists as to whether Plaintiffs are infringing, or have infringed, Mr. Fuss' copyrights by past or continuing use of the Works as part of SweetWater's branding, trademarks, and logos.

42.

This controversy is immediate and real, particularly in light of the Fulton Complaint. Indeed, the facts and legal theories set forth in the Fulton Complaint cannot be resolved without creating a risk of direct interference with Plaintiffs' rights in the Works.

**COUNT ONE**

**DECLARATORY JUDGMENT: NO COPYRIGHT INFRINGEMENT**

43.

An actual and justiciable controversy exists because Mr. Fuss is claiming to own the Works, to have the right to prevent Plaintiffs from using the works, and to

have as-of-yet-unasserted copyright infringement claims against Plaintiffs based on the Works.

44.

Plaintiffs are reasonably apprehensive that if they continue to use the Works, they will be sued by Mr. Fuss for copyright infringement.

45.

Moreover, the Fulton Complaint cannot be adjudicated without the risk of rulings that could directly interfere with Plaintiffs' rights in the Works.

46.

Plaintiffs have not infringed and do not infringe any copyrights in the Works because their use has always been either as owner of the Works or under an irrevocable implied license.

47.

A judgment declaring that Plaintiffs have not infringed and are not infringing the copyrights in the Works would finalize the controversy between the parties, offer them relief from uncertainty, and avoid the potential for inconsistent rulings in the case initiated by the Fulton Complaint.

48.

Accordingly, Plaintiffs request an order declaring that their current, future, and past use of the Works does not infringe any rights Defendant may have.

49.

Plaintiffs are entitled to a declaration to that effect in this action.

50.

In light of the existing controversy, Plaintiffs may be damaged in the absence of such a declaration.

## JURY DEMAND

51.

Pursuant to Fed.R.Civ.P. 38(b), Plaintiffs demand a trial by jury on all issues triable by right of jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court:

1. Declare that Plaintiffs have not infringed and are not infringing any copyright of Defendants;

2. Award Plaintiffs the cost of this action and their reasonable attorney's fees; and

3. Award Plaintiffs such other and further relief as the Court may deem necessary and proper.

Respectfully submitted this 4th day of January, 2022,

>*/s/ Amanda G. Hyland*
>Amanda G. Hyland
>ahyland@taylorenglish.com
>Georgia Bar No. 325115
>Todd E. Jones
>tjones@taylorenglish.com
>Georgia Bar No. 403925
>Brent M. Radcliff
>bradcliff@taylorenglish.com
>Georgia Bar No. 183624
>
>
>TAYLOR ENGLISH DUMA LLP
>1600 Parkwood Circle, Suite 200
>Atlanta, Georgia 30339
>Phone: (770) 434-6868
>Facsimile: (770) 434-7376
>
>*Attorneys for Plaintiffs*