# EXHIBIT C

# SMITH | TEMPEL

SMITH TEMPEL BLAHA LLC

Matthew T. Hoots
*Direct* 706.621.5773
mhoots@srtslaw.com

January 19, 2021

*Via Email Only*
Stephen M. Schaetzel
Meunier Carlin & Curfman LLC
999 Peachtree Street NE, Suite 1300
Atlanta, Georgia 30309

      Re:    Fuss Ownership of Copyrighted Material
                 Our File No. 06070.3010

Dear Mr. Schaetzel:

      This letter is in response to your letter dated December 24, 2020. The relevant assertions in your letter are *ipse dixit*. Under no intellectually honest review of the relationship between Mr. Fuss and SweetWater can it be concluded that Mr. Fuss was an employee of SweetWater. Moreover, the works in question were not made for hire, at least for the reason that the Statute of Frauds dictates that such a work made for hire must be in writing. Further, and importantly, not only has Mr. Fuss asserted claims of ownership in the works over the years, but your client has affirmatively acknowledged Mr. Fuss's ownership rights.

      In 1996, Mr. Fuss (d/b/a Petroglyph Studio) was retained by SweetWater to develop a portfolio of "leaping trout" graphic designs upon which SweetWater could build its fledgling brand. SweetWater retained Mr. Fuss for the project primarily because he was in the business of creating artwork for companies and had a reputation for high quality, professional designs. The result of that effort produced a leaping trout portfolio of artwork that included, *inter alia*, the "Trout banner" and the "SweetWater leaping rainbow trout" you referenced in your letter. Mr. Fuss developed and delivered copies of his work product to SweetWater in return for $500 and an understanding with Mr. Bensch that Mr. Fuss would be compensated more fully if/when SweetWater was sold. The value of the work product at the time, by any reasonable standard, was far in excess of $500, but in light of SweetWater's apparent limited financial resources and Mr. Fuss's meeting of the minds with Mr. Bensch regarding future payment, Mr. Fuss decided to "bet on" SweetWater's eventual success (the "Mutual Agreement"). Consistent with this Mutual

January 19, 2021
Page 2

Agreement, Mr. Fuss retained ownership of the artwork while placing no limits on SweetWater's usage of that artwork to build its brand.

In the years that followed, SweetWater returned to Mr. Fuss to expand the leaping trout portfolio. One notable example was a request from SweetWater that Mr. Fuss create a three-dimensional derivative work of the "leaping trout" in the form of a beer tap handle (the "leaping trout tap handle"). Relying on the Mutual Agreement with Mr. Bensch, Mr. Fuss created and delivered the derivative work to SweetWater for use in manufacture of the leaping trout tap handle. Consistent with the original work product authored in 1996, Mr. Fuss retained ownership of the underlying artwork used to create the leaping trout tap handle since both parties understood that it was not a work made for hire. As the author and owner of the artwork underlying the leaping trout tap handle, Mr. Fuss subsequently applied for and was granted a copyright registration. Later, when SweetWater needed ownership of the underlying artwork, presumably in order to have standing to assert certain legal claims in a lawsuit against a restaurant in Virginia, SweetWater came back to Mr. Fuss and asked that he assign ownership of the leaping trout tap handle copyright over to SweetWater. In good faith and reliance on the Mutual Agreement, Mr. Fuss complied and executed an assignment in favor of SweetWater for the leaping trout tap handle artwork only (the "Assignment"). SweetWater's request that Mr. Fuss execute the Assignment is a *prima facie* indication that, like the original works created in 1996, SweetWater understood that the three-dimensional derivative work created for the leaping trout tap handle was not a work made for hire and, importantly, that SweetWater did not have ownership of the artwork. A copy of the Assignment is attached to this letter and, upon information and belief, Mr. Bensch is in possession of a fully executed copy.

Another indication that SweetWater understood and acknowledged Mr. Fuss's ownership rights in the artwork he created is witnessed by notary in a 2002 agreement between Mr. Fuss and Mr. Bensch (the "2002 Agreement"). In 2002, SweetWater apparently had need for various original deposits of the leaping trout artwork, the ownership of which was retained by Mr. Fuss in reliance on the Mutual Agreement as explained above. An executed copy of the 2002 Agreement is attached to this letter. In the 2002 Agreement, Mr. Bensch acknowledges that the artwork is the property of Mr. Fuss and promises to return the artwork by or before a certain date.

SweetWater's position that the portfolio of leaping trout artwork created by Mr. Fuss was a work made for hire is clearly contradicted by the Assignment and the 2002 Agreement, over and above the lack of a work made for hire agreement. If SweetWater owned the artwork by way of the work made for hire doctrine, there would have been no need for the Assignment or the 2002 Agreement. Additionally, from time to time over the last 20 years, contrary to the assertions in your letter, Mr. Fuss has, in fact, approached Mr. Bensch and inquired as to whether

January 19, 2021
Page 3

Mr. Bensch had any interest in "going ahead" and acquiring the leaping trout portfolio. The last such inquiry was made in 2018 – Mr. Bensch declined.

In view of the above, Mr. Bensch was fully aware, or should have been fully aware, that Mr. Fuss claims ownership in the leaping trout portfolio of artwork. And so, we were surprised to learn from your letter that Mr. Bensch moved forward with the sale of SweetWater without addressing Mr. Fuss's interests, a sale that presumably included a warranty of clear title in, and control of, the leaping trout portfolio of artwork. In addition to all the actions by both parties over the past decades making clear that Mr. Fuss owned the leaping trout portfolio of artwork, Mr. Fuss contacted Mr. Bensch in the weeks leading up to Thanksgiving, 2020, to remind Mr. Bensch of the Mutual Agreement and to ask about the closing schedule for the pending sale of SweetWater. Mr. Bensch delayed the conversation with Mr. Fuss until December 2, after which counsel traded emails until the undersigned received your letter on Christmas Eve, 2020.

It is disappointing that this matter was not addressed prior to the sale of the company. Fortunately for SweetWater and its buyer, Mr. Fuss remains willing to transfer his ownership rights in the leaping trout portfolio. For the benefit of both parties, we urge Mr. Bensch to engage in a good faith negotiation to fulfill his obligations to Mr. Fuss.

This letter does not constitute a complete statement of Mr. Fuss's rights, claims, or remedies with respect to this matter, all of which are hereby expressly reserved in the absence of settlement.

We look forward to hearing from you immediately.

Sincerely yours,

*Matthew T. Hoots*

Matthew T. Hoots

cc: Gregory Scott Smith