# EXHIBIT D

# SMITH | TEMPEL

SMITH TEMPEL BLAHA LLC

Matthew T. Hoots
*Direct* 706.621.5773
mhoots@srtslaw.com

May 18, 2021

*Via Federal Express and Email (ahyland@taylorenglish.com)*
Amanda G. Hyland
Taylor English Duma LLP
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339

Re:   Fuss Ownership of Copyrighted Material (*inter alia*, registrations VAU1-326-605 and VA2-084-616 for the "Trout banner" and the "SweetWater leaping rainbow trout")

   Our File No. 06070.3010

Dear Ms. Hyland:

   This letter is in response to your client's repeated adversarial positions, the most recent iteration being that contained in your letter dated February 9, 2021, insisting that it owns Mr. Fuss's Copyrighted Material. Moreover, your letter emphatically concludes ***this matter is closed.*** This matter is not closed: Mr. Fuss maintains his authorship and ownership of the Copyrighted Material and the historical recounting of this matter provided in my letter to SweetWater's former counsel on January 19, 2021.

   In an attempt to cut off the rightful fruits of Mr. Fuss's authorship and ownership in the Copyrighted Material, your client has now twice made false claims of "work made for hire." It's an incredible position your client takes, particularly given that on numerous occasions, in both word and deed, your client has affirmatively acknowledged Mr. Fuss's ownership of the Copyrighted Material (see, for example, the notarized 2002 Agreement referenced in my letter of January 19, 2021 and attached thereto as an exhibit). The 2002 Agreement was perfectly consistent with, and clarifying of, the mutual understanding of the parties going back to 1996; it is remarkable that your letter ignores the implications of the 2002 Agreement and instead opts to suggest that Mr. Fuss opportunistically delayed his claim of ownership for 24 years. And so, as remarkable as it is for the evidence it ignores, your letter is equally as remarkable for the claims of laches and estoppel that it asserts. How could Mr. Fuss have opportunistically delayed a claim

Atlanta Office | 50 Glenlake Parkway • Suite 340 • Atlanta, GA 30328 • Phone 770.709.0080 • Fax 770.804.0090
Athens Office | 1055 Prince Avenue • Athens, GA 30606 • Phone 706.621.5777

May 18, 2021
Page 2

of ownership that he'd already made and that your client had affirmatively acknowledged as far back as 2002? When, exactly, before December 2020 did Mr. Fuss ever have reason to conclude that your client intended to ignore, seize, and assign to another company the rights which rightfully and legally belonged to Mr. Fuss? Indeed, the real irony of your argument is that it's your own client, not Mr. Fuss, who is estopped from now claiming ownership of the Copyrighted Material.

Suggesting Mr. Fuss is somehow estopped from a claim of ownership in the Copyrighted Material is legally unsupportable – we cannot see any court allowing your client to take such a legal position, whether as a counterclaim or affirmative defense. As your client has repeated before (in fact, when he obtained copies of the original work materials in 2002), Mr. Fuss's artwork was instrumental to the successful branding of SweetWater. Any belated attempt by your client to deny that reality is the real case of opportunism and laches. In fact, the statute of limitations, laches, and promissory and equitable estoppel most likely will bar any attempt by your client, or its assigns, to assert such an argument of ownership given the 2002 document. Making this argument now seems to evidence an intent and willingness to engage in a most willful violation of Mr. Fuss's rights by or through your client.

The Mutual Agreement between the parties, as evidenced by the actions of the parties over the years and the 2002 Agreement, kept ownership of the Copyrighted Material (including the original artwork and deposits) with Mr. Fuss and included a promise that Mr. Fuss would "be at the table" when SweetWater Brewing was sold. In return, SweetWater Brewing enjoyed a limited license to build its brand upon the Copyrighted Material. SweetWater Brewing has recently been sold and Mr. Fuss was not "at the table." Simply put, in December 2020 your client appears to have knowingly sold intellectual property rights it did not own and had no right to sell. If the sales documents do not contain such assignments, transfers, warranties, and indemnities, please provide a copy of those to us without delay. But from what we know already, your client certainly knew about the 2002 Agreement and Mr. Fuss's claim of ownership in the Copyrighted Material before the sale of SweetWater to Aphria in December 2020. And, by extension, your client and his counsel certainly knew about the 2002 Agreement and Mr. Fuss's claim of ownership in the Copyrighted Material before the merger of Aphria with Tilray earlier this month. Our assumption is that Mr. Fuss's claims of ownership in the Copyrighted Material were not disclosed to Aphria or Tilray and that, instead, your client falsely made his own representations and warranties of ownership in the Copyrighted Material. I'm certain that you can appreciate how problematic this situation is for your client, but if we are even partially correct as to the nature of what he likely signed concerning assignment, transfer, warrants, representations, covenants, and indemnities, it would certainly be a situation of his own making.

May 18, 2021
Page 3

      There can be no doubt that Mr. Fuss was, is, and remains the author and owner of the Copyrighted Material. Based solely on your client's words, conduct, and actions, which are adversarial to, and flatly contradict, the history of the relationship between the parties and the 2002 Agreement, and further which constitute openly false representations of ownership in the Copyrighted Material to the detriment of Mr. Fuss's rights in same, the agreement between the parties has been breached. Therefore, be advised:

      **EFFECTIVE IMMEDIATELY: Mr. Fuss hereby terminates each, every, and all licenses and permissions to use the Copyrighted Material in any way. Be further advised that Mr. Fuss has not sold, assigned, licensed, conveyed or otherwise transferred any right, title, or interest in the Copyrighted Material to Aphria, Tilray or any other assign or successor in interest to Mr. Bensch or SweetWater Brewing and, as such, effective immediately, notice is hereby given of his lack of consent to, and his claims to prohibit and prevent, any and all parties from violating, disparaging, claiming ownership, duplicating, selling, copying, reproducing, or otherwise infringing on his exclusive rights in and to the Copyrighted Material.**

      Our expectation is that Mr. Bensch, SweetWater Brewing, Aphria, and Tilray (the "SweetWater parties") will take immediate steps consistent with the above to cease unauthorized use of the Copyrighted Material going forward. Despite the conclusion in your letter, it should be clear that this matter is not over and that my client waives nothing and reserves any and all rights, claims, and defenses he has whether at law or equity, by common law, statute, or otherwise. Govern yourself accordingly.

      Sincerely yours,

      *Matthew T. Hoots*

      Matthew T. Hoots


cc:    Gregory Scott Smith, Esq.
       Blaine A. Norris, Esq.
       John Autry, Esq.